# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 5, 2006          Decided September 8, 2006

No. 05-5370

JIBRIL L. IBRAHIM
APPELLANT

v.

DISTRICT OF COLUMBIA, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 05cv00051)

*Alexander D. Chinoy*, appointed by the court, argued the cause as *amicus curiae* in support of appellant. With him on the briefs was *Anthony F. Shelley*, appointed by the court.

*Jibril L. Ibrahim*, appearing *pro se*, filed appellant's briefs.

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *Michael J. Ryan*, Assistant U.S. Attorney.

Before: HENDERSON, ROGERS and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*:  Jibril L. Ibrahim, who is serving a life sentence in a federal penitentiary, filed a *pro se* suit against the District of Columbia, the United States, and federal prison authorities claiming they denied him adequate medical treatment for Hepatitis C and prostate cancer.  Ibrahim appeals the District Court's dismissal of his claims on the grounds of *res judicata* and lack of federal subject matter jurisdiction.  We reverse in part the District Court's order and remand for proceedings consistent with this opinion.  We also grant Ibrahim leave to appeal *in forma pauperis*.

## I.

In 1988, Ibrahim was convicted in the District of Columbia for Assault with Intent to Commit Rape While Armed, Burglary I While Armed, and Assaulting, Resisting, or Interfering with an Officer with a Dangerous Weapon.  He is currently in a federal penitentiary because the Federal Bureau of Prisons is responsible for the "custody, care, [and] treatment" of felons sentenced pursuant to the D.C. Code.  *See* National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, § 11201, 111 Stat. 251, 734 (1997).  Since his incarceration, Ibrahim has filed approximately 138 civil claims in federal court.  Ibrahim's "profuse and meritless filings" prompted the United States District Court for the District of Columbia to issue an injunction in 1993 prohibiting him from filing further suits without first obtaining the District Court's approval.  *Anderson v. D.C. Pub. Defender Svc.*, 881 F. Supp. 663, 670 (D.D.C. 1995).  To receive such approval, the District Court's order requires Ibrahim to demonstrate that his claim is in good faith and not frivolous, has a tenable basis, and is not precluded by previous suits.  *Id*. at 666.

In 2004, Ibrahim requested leave of the District Court to bring suit, alleging that the District of Columbia failed to treat his prostate cancer in violation of 42 U.S.C. § 1983, the Eighth Amendment of the United States Constitution, the "common law of the District of Columbia," and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq*. The District Court granted leave to file suit, but ultimately dismissed Ibrahim's complaint because it improperly sought to hold the District of Columbia liable for alleged misconduct by officials of the Federal Bureau of Prisons.

A year after the District Court dismissed that claim, Ibrahim sought permission to bring suit again, this time against not only the District of Columbia, but also the United States and federal prison authorities. Ibrahim alleged that each had failed to properly treat his prostate cancer and, he now alleged, his Hepatitis C infection. The District Court granted permission to bring suit and allowed Ibrahim to pursue his claims *in forma pauperis* in that forum.

That suit, which is now before us, claims violations of the ADA, the Eighth Amendment, and 42 U.S.C. § 1983. The gravamen of Ibrahim's new allegations is that the defendants have failed to provide him adequate medical treatment for Hepatitis C, which has damaged his liver and placed him at heightened risk of other injuries and even death. Ibrahim also alleges a smorgasbord of wrongdoings by the defendants. He alleges they have denied him access to justice and various prison benefits, confiscated his religious headgear, refused him a winter coat and an appropriate mattress, and failed to mitigate assaults against him by prison personnel.

The District of Columbia moved to dismiss his complaint, arguing that the 2004 dismissal barred all of Ibrahim's claims under *res judicata*. The federal defendants filed a separate

motion challenging Ibrahim's *in forma pauperis* status. The District Court agreed with the District that Ibrahim's claims were barred by *res judicata* and granted the District's motion to dismiss. It dismissed *sua sponte* Ibrahim's claims against the federal defendants, concluding he had failed to state a valid claim under the ADA, which the Court viewed as the sole basis for federal jurisdiction.

Ibrahim appealed the dismissal of all but his ADA claim and paid $100, less than half of the $255 fee required to file a notice of appeal. The Clerk ordered Ibrahim to show cause why his appeal should not be dismissed for failure to pay the filing fee. In response, Ibrahim argued that he qualified to appeal *in forma pauperis* because he was "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). We discharged the Order to Show Cause, appointed amicus curiae to represent the *pro se* litigant's interests, and directed the parties to address both the merits of Ibrahim's appeal and whether he should be permitted to appeal *in forma pauperis*.

Amicus argues that Ibrahim should be allowed to proceed *in forma pauperis* before this Court because he is in imminent danger of physical injury. In addition, amicus argues that the District Court erred in dismissing Ibrahim's complaint on *res judicata* grounds and in failing to retain jurisdiction over his other claims after dismissing the ADA claim.

## II.

We begin with Ibrahim's request to proceed *in forma pauperis* before this Court, which we grant. Section 1915(g) of the Prison Litigation Reform Act (the "PLRA"), 28 U.S.C. § 1915, bars a prisoner from proceeding *in forma pauperis* if "the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of

the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). This section is referred to as the "three strikes" rule. *See Ibrahim v. District of Columbia*, 208 F.3d 1032, 1033 (D.C. Cir. 2000). "In enacting the PLRA in 1996, Congress endeavored to reduce frivolous prisoner litigation by making all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by liability for filing fees." *In re Smith*, 114 F.3d 1247, 1249 (D.C. Cir. 1997) (citations and brackets omitted). Thus, "Congress enacted the PLRA primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act, most of which concern prison conditions and many of which are routinely dismissed as legally frivolous." *Id.* (citation omitted). The sole exception to the "three strikes" rule of § 1915(g) is where the prisoner is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

Because Ibrahim has many more than the three strikes that trigger the bar of § 1915(g), he cannot appeal *in forma pauperis* unless he qualifies for the imminent danger exception. *See id.* In determining whether he qualifies, we look to the complaint, which we "construe liberally and the allegations of which we must accept as true." *Brown v. Johnson,* 387 F.3d 1344, 1350 (11th Cir. 2004); *see also Warren v. District of Columbia*, 353 F.3d 36, 37 (D.C. Cir. 2004) ("[*P*]*ro se* prisoner complaints should be 'liberally construed.'") (citation omitted); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C. Cir. 1979) (We "accept the truth of the well-pleaded factual allegations of the complaint" in reviewing a facial dismissal.).

In his complaint, Ibrahim alleges that defendants have "fail[ed] . . . and refus[ed] to treat" him with "possible eradication treatment" for his Hepatitis C, placing him "in a posture of serious physical injury or humiliating death and

suffering." Amicus argues that these allegations satisfy the "imminent danger" requirement.

We agree. The PLRA does not define the term "imminent danger," and we have not previously addressed whether allegations of an ongoing injury, a recurring injury, or a pattern of misconduct likely to produce imminent harm—the allegations Ibrahim and his amicus press here—are sufficient to satisfy this requirement. We need not resolve the precise contours of "imminent danger" in this case because we think it clear that failure to provide adequate treatment for Hepatitis C, a chronic and potentially fatal disease, constitutes "imminent danger." Ibrahim has alleged that the lack of adequate treatment results in "diminished liver function, damage, [and] fibrosis/cirrhosis," and that he is at risk for *further* liver damage, as well as "death, liver and multiple organ failures, [and] sufferance." Without adequate treatment, Ibrahim will continue to suffer additional harm, if not death, from his Hepatitis C. That surely is sufficient to constitute "imminent danger." *See Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998).

Nor is there any doubt that Ibrahim is in danger of "a serious physical injury," as required by 28 U.S.C. § 1915(g). The PLRA does not define this term, and we have not interpreted its meaning in past cases, but we have no difficulty concluding that a chronic disease that could result in serious harm or even death constitutes "serious physical injury." Other circuits have found that similar allegations constitute a "serious physical injury." *See, e.g.*, *Brown*, 387 F.3d at 1350 ("[T]he afflictions of which Brown currently complains, including his HIV and hepatitis, and the alleged danger of more serious afflictions if he is not treated constitute imminent danger of serious physical injury."); *Ciarpaglini*, 352 F.3d at 330 ("[H]eart palpitations, chest pains, labored breathing, choking sensations, and paralysis

in . . . legs and back" resulting from a denial of medication were serious physical injury.); *McAlphin v. Toney*, 281 F.3d 709, 710 (8th Cir. 2002) ("[S]preading infection" in the mouth resulting from lack of proper dental treatment was a serious physical injury.).

Having determined that Ibrahim's alleged danger is "imminent," and that the danger is that "of serious physical injury," we conclude that Ibrahim qualifies for the exception to the "three strikes" rule. *See* 28 U.S.C. § 1915(g). Because there is no dispute that Ibrahim otherwise qualifies, we grant him leave to appeal *in forma pauperis*.

## III.

We next turn to the District Court's application of *res judicata*, which we review *de novo*. *See, e.g.*, *Gilvin v. Fire*, 259 F.3d 749, 756 (D.C. Cir. 2001). Under the doctrine of *res judicata*, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)). The District Court applied *res judicata* in the present suit based on the 2004 suit and dismissed Ibrahim's claims against the District of Columbia because they "were fully litigated and decided against him in the prior action." *Ibrahim v. District of Columbia*, Civ. No. 05-51, Mem. Op. at 3 (D.D.C. Aug. 10, 2005).

The District Court properly dismissed Ibrahim's claim against the District of Columbia for failure to provide adequate medical treatment for his prostate cancer because it is no more than a reprise of his previous dismissal. It "involve[s] the same parties" and is "based on the same cause of action" as Ibrahim's 2004 suit. *Drake*, 291 F.3d at 66. Ibrahim's claims in this case,

however, involve more than a cause of action based on his prostate cancer. In his latest suit, Ibrahim seeks proper treatment for Hepatitis C and raises a host of claims unrelated to his prostate cancer, against not only the District of Columbia but also federal defendants who were not parties to the 2004 suit. Absent a showing of any relationship between these new claims and Ibrahim's previous prostate cancer claims, we must reverse the District Court's dismissal, with the exception of the dismissal of his claims against the District of Columbia involving his prostate cancer, and remand for further proceedings.[1]

The District Court concluded that Ibrahim's claims against the federal defendants should also be dismissed because they could not be brought under the ADA. Ibrahim's claims, however, invoke federal question jurisdiction pursuant to several statutes. For example, Ibrahim seeks to pursue several constitutional claims pursuant to 28 U.S.C. § 1331. Although claims can be dismissed for lack of federal subject matter jurisdiction where they are "wholly insubstantial and frivolous," *Bell v. Hood*, 327 U.S. 678, 682-83 (1946), colorable claims are not dismissed for lack of jurisdiction unless "Congress [has] . . . rank[ed] a statutory limitation on coverage as jurisdictional," *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1245, ___ U.S. ___, ___ (2006). Because the District Court did not apply these standards in dismissing Ibrahim's claims for lack of jurisdiction, we remand for the District Court to address them in the first instance.

---

[1] The federal defendants have not sought to invoke *res judicata* based upon Ibrahim's earlier suit against the District of Columbia.

## IV.

For the foregoing reasons, we grant Ibrahim leave to appeal *in forma pauperis*, reverse in part the District Court's dismissal of his complaint, and remand the case for further proceedings consistent with this opinion.

*So ordered.*